FILED
SCRANTON

MAR 2011

JAMES A. YATES,
     Petitioner,

         v.

B.A. BLEDSOE, Warden, U.S.
Penitentiary, Lewisburg,
     Respondent.

Crim. Case No. 95CR510-18
Civil Case No. 01C8331
Case No. _____

*11-572*

MEMORANDUM OF LAW IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO
TITLE 28 U.S.C. § 2241(a), (c)(3)

COMES NOW, James A. Yates, appearing in the above styled
cause, and respectfully moves this Honorable Court to grant the
relief stated herein, pursuant to 28 U.S.C. § 2241. In support
thereof it is stated:

STATEMENT OF THE CASE

On August 31, 1995, thirty-nine persons including Petitioner
Yates were charged with a narcotics conspiracy and related offenses,
in violation of 21 U.S.C. §§ 843, 846, 841 and 848(a). The charges
were brought in three separate indictments. (95 CR 508, 509, 510)

The Petitioner and others were charged with being leaders of the Gangster Disciples ("GD") street gang and alleged co-conspirators.

On June 19, 1996, a grand jury returned a superseding indictment in this case, 95 CR 510, charging nineteen defendants. R584. Defendants Roger Stewart, Timothy Nettles, Delano Finch, and Jamie pugh pleaded guilty prior to trial. R541, 597, 726, 748, 1134.

On July 2, 1997, the jury found all of the defendants guilty as to at least one count except Angela Parks, who was aquitted. Each of the twelve convicted defendants except Scott Davis were convicted of the conspiracy count, 21 U.S.C. § 846 (count one) and defendants Cedric Parks, Clarence Haywood and Petitioner Yates were convicted of participating in a continuing criminal enterprise, "CCE", 21 U.S.C. § 848(a), (count two).

On April 6, 1998, Judge George W. Linberg granted recusal motions filed by petitioer Yates and the case was reassigned to Judge George M. Maovich. R1177-78. All post-trial motions were heard by Judge Marovich. Oral arguments were held and defense motions for mistrial due to Judge Lingberg's conflict of interest and motions for dismissal were denied. R1219, 1247. Judge Marovich immediately proceeded to sentencing petitioner Yates to mandatory life. Yates timely filed notice of appeal.

On March 23, 2000. the Seventh Circuit Court of Appeals affirmed Petitioner Yates' conviction and mandatory life sentence and, on October 30, 2000, the United States Supreme Court denied Cert. as to petitioner Yates.

Petitioner Yates timely filed his motion vacate, set aside or

correct sentence pursuant to title 28 U.S.C. § 2255 in 2001, arguing (amongst other claims) that he was entitled to relief because trial counsel's obvious conflict of interests resulting from a joint defense agreement adversely affected his trial; and that appellate counsel Howard B. Levy was ineffective in failing to raise trial counsle's conflict in Yates' direct appeal. The district court ruled that "the ineffective assistance of trial counsel claim is procedurally barred. The ineffective assistance of appellate counsel claim in inadequate on the merits." Mem.Opn. & Ord. @15.

Petitioner Yates also argued, in his § 2255 motion that the conviction under 21 U.S.C. § 848(a) rest on "legally impermissible ground"; and that appellate counsel was ineffective in failing to raise this claim in Yates' direct appeal. The district court ruled that this claim was also procedurally barred and meritless, and that appellate counsel was not ineffective for failing to include an issue that had no chance of success on appeal.

Petitioner Yates' § 2255 motion was denied; his request for certificate of appealability in turn was also denied by the district court. Nearly a year latter, this Court of appeals likewise denied Petitioner Yates' request for "COA", his petition for rehearing/ rehearing en banc and his motion to recall the mandate due to the district court's erroneous application of law, all denied.

On June 24, 2004, the Supreme Court decided **Blakely**, and on January 12, 2005, the Supreme Court decided **Booker/Fanfan**.

April 2005, Petitioner Yates filed for a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241(a), (c)(3), before

the Middle District of Pennsylvania in the Third Circuit inlight of **Blakely /Booker/Fanfan**. On Aught 9, 2005, the Court of Appeals for the Third circuit dismissed Yates' petition for writ of habeas corpus for "lack of jurisdiction".

Effective November 1, 2007, the sentencing commission lowered sentencing ranges for "crack" offense by two level under amended § 1B1.10, it found the "crack" guideline over punished crack offenders. On June 8, 2008, Petitioner Yates moved for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2) in light of said retroactive Amendment, 706. The District Court denied relief which it stated is due to Petitioner Yates having a mandatory-life statutory sentence pursuant to 21 U.S.C. § 848(b).

On December 29, 2010, Yates sought permission to file a second or successive § 2255 motion as required by 28 U.S.C. § 2244(b)(3)(A). On January 3, 2011, the Court of Appeals for the Seventh Circuit found that the second or successive § 2255 motion was inadequate or ineffective to test Yates' detention in light of **O'Brien**. (See, ground three).

### PRELIMINARY STATEMENT

The specific facts of this case, including the collective misinterpretation of the statute by all parties, the late discovery of the correct interpretation, and the subsequent acceptance of that interpretion by the court and the government weigh strongly in favor of collateral review here. The trial court's misconstruction of the statute and Yates' mandatory minimum sentence under 21 U.S.C. § 848(b) violates due process of law and the right to a jury trial under the Fifth and Sixht Amendments to the United States Constitution. At this time, Yates is being continuously deprived

4

of the rightful liberty by virtue of violation to his constitutional rights. It is undisputed that petitioner Yates' claim has merit, and having exhausted all other available means of remedies in this regard, petitioner Yates has no other alternative than to seek relief under 28 U.S.C. § 2241 from the violations described herein, which in good-faith represent a level of constitutional infirmity that authorizes this Honorable Court today to accept this matter for review in order to ultimately prevent a "complete miscarraige of justice."

Petitioner Yates do not suggest that 28 U.S.C. § 2255 would be "inadequate or ineffective" to enable a second petition under that statute, or that he here invokes Section 2241 because a petition under § 2255 would be unable to meet the stringent gatekeeping requirements of the amended Section 2255 statute. Such a postition would effectively eviscerate Congress's intent in amendimng § 2255. However, allowing someone in Yates' unusual position, that of prisoners who had no earlier opportunity to challenge their convictions for a crime that an intervening change in substantive law may negate, because such a change should be applied retroactively on collateral review, would hardly undermine the gatekeeping provision of § 2255. **In Re Dorsainivil**, 119 F.3d 245, 248-49 (3rd Cir. 1997).

Any distinction between innocence of the underlying crime and innocence of the crime used to enhance a sentence is absent because "in both instances, a petitioner is being held in contravention of the laws of the United States. In one scenario, the petitioner is imprisoned for conduct for which [he] is innocent; in the other scenario, [he] is imprisoned longer because of conduct of which [he]

5

is innocent. In either event, [his] liberty is stripped." <u>Gonzalez</u>
<u>v. United States</u>, 135 F.Supp.2d 112, 121-22 (D.Mass. 2001); <u>see</u> <u>also</u>
<u>Gilbert</u>, <u>supra</u> (same).

## Is Section 2255 Inadequate And/Or Ineffective In This Case?

Habeas corpus is not unavailable whenever a federal prisoner
faces substantive or procedural barriers to relief by way of a post-
conviction motion under 28 U.S.C. § 2255. Rather, a Section 2255
motion is "inadequate or ineffective" in those cases in which peti-
tioners cannot, for whatever reason, utilize that procedure, and in
which failure to allow for collateral review would raise serious
constitutional questions. <u>See</u> <u>In Re Dorsainvil</u>, 119 F.3d 245, 248
(3rd Cir. 1997)("were no other avenue of judicial review available
for a party who claims that s/he is factually or legally innocent
as a result of a previously unavailable statutory interpretation,
we would be faced with a thorny constitutional issue").

Moreover, under the Antiterrorism and Effective Death Penalty
Act of 1996 ("AEDPA"), a federal prisoner's successive motion for
post-conviction relief would be justiciable only if it was based on
newly discovered evidence or a new rule of constitutional law, made
retroactive to cases on collateral review by the Supreme Court. Mere
intervening change in non-constitutional law would not be sufficient.
<u>See</u> <u>Dorsainvil</u>, <u>supra</u>.

On the other hand, Title 28 U.S.C. § 2241 states, "[W]rits of
habeas corpus may be granted by the Supreme court, and justices
thereof, the district court, and any circuit judge within their re-
spective jurisdictions" to prisoners "in custody in violation of the

6

Constitution or laws or treaties of the United States." 28 U.S.C.
§ 2241(a), (c)(3).    Yates    are "in custody" and contend such
custody to be "in violation of the Constitution or laws of the Uni-
ted States." Ibid.

In 1948, Congress enacted 28 U.S.C. § 2255, which routes coll-
ateral attacks by federal prisoners to the sentencing court, instead
of the court in the district of confinement, in an effort to serve
as a more efficient and conductive substitute for traditional hab-
eas corpus remedy. By enacting § 2255, Congress restricted, but did
not eliminate, the rights of federal prisoners to utilize § 2241(c)
(3) as a collateral attack.

As originally and enacted, and then as amended by AEDPA, § 2255
contains an unequivocal exception to the requirement that federal
prisoners must use § 2255 instead of seeking a writ of habeas corpus
under § 2241. This exception is contained in what is commonly re-
ferred to as the "saving clause":

> "An application for a writ of habeas corpus in behalf of a
> prisoner who is authorized to apply for relief by motion
> pursuant to this section, shall not be entertained if it
> appears that the applicant has failed to apply for relief,
> by motion, to the court which sentenced him, or that such
> court has denied him relief, **unless it also appears that
> the remedy by motion is inadequate or ineffective to test
> the legality of his detention.**" 28 U.S.C. § 2255 (emphasis
> added).

It is in the "savings clause" that Petitioner  here rely as the
authority to seek a writ of habeas corpus pursuant to § 2241(c)(3).
Namely, that AEDPA has rendered § 2255 "inadequate or ineffective"
to test the legality of their detention. Therefore, by the terms of
the "savings clause" of § 2255, Yates is free to seek a writ of hab-
eas corpus. See Dorsainvil, 119 F.3d at 248-49 (holding that federal

prisoners may seek a writ of habeas corpus when § 2255 is inadequate or ineffective to test the laegality of his detention).

There can be no doubt that prior to the AEDPA, the sentencing court would have been entitled to rule on the merits of Yates' claim. Before AEDPA, it was the law of the circuits that a change in substantive non-constitutional law, such as in **United States v. O'Brien**, 130 S.Ct. 2169 (2010), could be applied retroactively to a defendant convicted under the previous interpretation of the law.

Therefore, AEDPA has rendered § 2255 inadequate or ineffective to test Yates' detention in light of **O"Bien** by barring his ability to file a second or successive motion under the statute. **Dorsainvil**, supra.

## STANDARD OF REVIEW

A claim asserting error of fundamental dimension is entitled to collateral review if it is : 1) based upon a retroactively applicable United States Supreme Court decision: 2) which establishes that the petitioner was convicted for a non-existent offence: and, 3) circuit law squarely foreclosed it at the time it should have been or was brought. See, **Gilbert v. United States**, 2010 U.S. App LEXIS 12693 (6/23/10)("Petitioner was entitled to relief under 28 U.S.C. § 2241 from his enhanced sentence because he was actually innocent of his sentence enhancemnet and his continued incarceration for the illegal enhancement was a miscarraige of justice".

## REASONS FOR GRANTING THE WRIT

I.   ALMENDEREZ-TORRES/JONES/CASTILLO/O'BRIEN, TAKEN COLLECTIVELY, DO NOT REPRESENT A NEW RULE, BUT INSTEAD, THE FIRST INTERPRETATION OF THE ELEMENTS OF 21 U.S.C. § 841(b)

This case is about the construction of the federal drug distributioin statute, 21 U.S.C. § 841. It implicates the Supreme Court's methodology in interpreting criminal statutes in cases like **Almenderez-Torres v. United States**, 523 U.S. 224 (1998); **Jones v. United States**, 526 U.S. 227 (1999); **Castillo v. United States**, 530 U.S. 120 (2000); and **United States v. O'Brien**, No. 08-1564, 2010

U.S. LEXIS 4169 (May 24, 2010). To a limited degree, the jurisprudence in **Apprendi v. New Jersey**, 530 U.S. 466 (2000), although not a case of statutory interpretaion, is releveant to the discussion.

Generally, a fact that "increase[s] the prescribed range of penalties to which a criminal defendant is exposed" is an element of a crime, **Apprendi**, 530 U.S. @ 490, to be charged in an indictment and proved to a jury beyond a reasonsable doubt, **Hamling v. United States**, 418 U.S. 87 (1974), unlike a sentencing factor, which is proved to a judge at sentencing by a preponderance of the evidence. **McMillan v. Pennsylvania**, 477 U.S. 79 (1986). Constitutionally required.

Subject to this constitutional constraint, whether a given fact is an element of the crime itself or a sentencing factor is a question for Congress. When Congress is not explicit, as is often the case because it seldom directly addresses the distinction between sentencing factors and elements, courts look to the provisions and framework of the statute to determine whether a fact is an element or a sentencing factor. **Almenderez-.Torres**, 523 U.S. @ 228.

With that said, the Supreme Court's decisions in **Almenderez-Torres**, **Jones**, **Castillo**, and **O'Brien** set forth the principles of statutory constructiion that whould guide this Court in determining the elements required to be proven beyond a reasonable doubt contained in Section 841.

When examining these cases, the Supreme Court has made it quite clear that the inquiry in these cases is the distinction between elements of a crime and sentencing factors, acknowledging that elements of a crime can be mislabled as sentencing factors. In **Castillo, supra**, the opening paragraph makes this point very plain. See **Castillo**, 530 U.S. @ 121 ("In this case we once again decide whether words in a federal criminal statute create offense

9

elements (determined by a jury) or sentencing factors (determined by a judge)").

Whereas **Almenderez-Torres**, **Jones**, **Castillo**, and **O'Brien** deal with the interpretation of federal criminal statutes, confusion has arisen in the application of **Apprendi**, because of the failure to recognize that the **Apprendi** opinion addressed the constitutionality of a state criminal stataute. The issue here is one of statutory interpretation, and therefore, the constitutional analysis in **Apprendi** does not apply. Rather, the statutory construction principles set forth in the **Almenderez-Torres** line of cases must be applied to § 841, before any constitutional question is broached. See **Ashwander v. TVA**, 297 U.S. 288, 346-47 (1936)(articulating principle that cases should be decided on statutory grounds before reaching constitutional question). The **Almenderez-Torres** line of cases shows that the question is always between an element of a crime and a sentencing factor, not the creation of some new category for criminal enforcement--a sentencing factor to be proven to a jury.. Thus, **Apprendi** is discussed herein only to the extent of clarifying the historical approach to dealing with drug quantity and type.

a.    **Apprendi's Relationship With 21 U.S.C. § 841**

Using for example cocaine base, § 841(b) consists of three relevant subsections, each containing a sentencing range. Beginning with the most severe, § 841(b)(1)(A) imposes a mandatory minimum sentence of ten years and a maximum sentence of life when the offense involves (50) grams or more of a substance containing cocain base. The minimum sentence is increased to twenty years "if death or

10

serious bodily injury results" or if the defendant has a previous felonly drug conviction.

Section 841(b)(1)(B) imposes a mandatory minimum sentence of five years and a mximum of fourty years if the offense involves (5) grams or more of a substance containing cocaine base. Again, death or serious bodily injury increases the mandatory minimum sentence to twenty years, and a previous felonly drug conviction increases it to ten years.

Finally, § 841(b)(1)(C) is the catch-all provision that imposes a maximum sentence of twenty years and no minimum sentence, without specifying particular amounts for controlled substances. The maximum is increased to thirty years with a prior felonly drug conviction. The minimum is set at twenty years and the mximum at life if death or serious bodily injury results.

Prior to **Apprendi**, all of these factors——the amount of drugs involved in the crime, the fact of bodily injury or death, and the fact of previous felonly drug convictions——were seen as sentencing factors found by courts. **Apprendi** modified this approach, but only to a degree. Most courts construed **Apprendi** to require drug quantity be "treated" as an element, specially charged in the indictment and submitted to the jury, whenever the enhancement takes the defenant's sentence over the applicable statutory maximum. See generally, **Coleman v. United States**, 329 F.3d 77, 87 (2nd Cir. 2003), "The rule announced in **Apprendi**, by contrast, did not effect a change in the meaning of a federal criminal statute. Since the enactment of Section 841 in 1970, Pub. L. No. 91-513, § 401,

11

84 Stat. 1242, 1260-62 (1970), drug quantity has been an 'element' of a Section 841 offense—i.e., it has been something that the government must prove to obtain a conviction under Section 841(b)(1)(A) or (B). After **Apprendi**, the prosecution is not required to prove any facts that it was not required to prove before. The substance of the crime remains the same; only the trier of fact and the standard of proof have changed." Accordingly, as stated above, the constitutional analysis in **Apprendi** does not effect the statutory interpretation that must be applied to § 841 to resolve the inquiry in this case.

### b. Relevant History of 21 U.S.C. § 841

The history of section 841 shows that it was not until (17) years after the adoption of § 841 that an appellate court first suggested that it was unnecessary to prove the facts made relevant by § 841(b) to the jury beyond a reasonable doubt. Even then, that court spoke over dissent, in a case in which the issue had not been briefed. See **United States v. Wood**, 834 F.2d 1382, 1388-90 (8th Cir. 1987). It is not difficult, however, to understand what led the **Wood** majority to its conclusion. The **Wood** Court relied heavily on **McMillan v. Pennsylvania**, 477 U.S. 79 (1986), decided just the year before, which upheld against constitutional challenge the practice of judicial factfinding on a preponderance-of-the-evidence standard for factors triggering mandatory minimum sentences. **Wood**, 834 F.2d @ 1389. Moreover, the Sentencing Guidelines, in the works since 1984 and which rely on a similar factfinding scheme, were soon to go into effect. By 1991, a consensus had quickly formed in the courts of appeals that **Wood** had correctly decided that a jury need only find a generalized violation of § 841(a). The judge could then

12

decide by a preponderance of the evidence exactly what sort of violation it was, and what penalty provision of § 841(b) applied.[1]

The Supreme Court has never endorsed this consensus however, and by 1999 the wind was blowing in a distinctly different direction. **Apprendi** and its progeny cast grave constitutional doubt on the blithe assumption that § 841(b) merely sets forth a set of sentencing factors. Important to the analysis herein, **Apprendi** had been prefigured by **Jones**, 526 U.S. 227 a statutory interpretation decision in which the Supreme Court reversed a decision of the Ninth Circuit that fit snugly into the **Wood** trandition. .

**Jones** interpreted the federal carjacking statute, 18 U.S.C. § 2119, which prohibits taking a motor vehicle from the person of another by force or violence. Like § 841, the statute is divided, albeit not into distinct subsections. The statute first defines the criminal conduct, and then provides three separate subsections setting forth distinct punishments: Whoever violates the statute may be sentenced to up to (15) years, § 2119(1); if serious bodily injury results, however, a violator may be imprisoned for up to (25) years, § 2119(2); and, if death results, the maximum punishment is increased to life imprisonment or death, § 2119(3). Despite the apparent division of the statute into violation-defining and penalty-describing portions, and despite the fact that the sentence-enhancing elements are contained in penalty provisions and not in separate code sections expressly defining distinct crimes, the Supreme Court recognized that

---

1.    Notably, at least one circuit ruled to the contrary before **McMillan**. See **United States v. Alvarez**, 735 F.2d 462, 467-68 (11th Cir. 1984)(interpreting drug quantity as an offense element). But that decision was swept aside in the post-**McMillan** enthusiasm for sententencing factors.

the statute created three (3) distinct degrees of crime and a defendant must be proved beyond a reasonable doubt, to the satisfaction of a jury, to have caused the sentence-enhancing harm before the court can impose the enhanced punishments for the higher degrees of carjacking.

Finally, the **Jones** Court noted if a statute is equally susceptible to two (2) interpretations, one of which raises "grave and doubtful constitituional questions" that the other does not, a court should interpret the statute so as to avoid the constitutional question. **Jones**, 526 U.S. @ 239. By holding serious bodily injury to be an element of a crime requiring proof beyond a reasonable doubt, the Court avoided a constitutional question. **Ibid**.

A year after the **Jones** decision, the Supreme Court in **Castillo**, 530 U.S. 120, reversed another court of appeals ruling—this time the Fifth Circuit—that had shown similar over-enthusiasm for finding a statute to create sentencing factors rather than distinct offenses. In **Castillo** the Court confronted 18 U.S.C. § 924(c), which imposed a mandatory sentence of five (5) years for using a firearm in connection with a crime of violence, but raised the sentence to thirty (30) years if the firearm in question was a machinegun. As a pure matter of statutory interpretation, without reference to any constitutional principle, the Court rejected the notion that Congress had intended that the nature of the firearm in question be a mere sentencing factor, to be decided by the sentencing judge by a preponderance of the evidence. The Court simultaneously acknowledged that the statute's language "appeared neutral" on the subject, **Id**.

14

@ 124; that there were some "structural circumstances" supporting a contrary interpretation, **Id**. @ 125 And, there were indications in the legislative history suggesting that Congress thought its enactment related to sentencing factors; notably, this is not the case with Section 841. **Id**. @ 129-30.

Dismissing arguments in favor of finding that the statute created mere sentencing factors, the Court instead placed considerable weight on factors that are also instructive in the context of narcotics offenses. First, the Court noted that the nature of the firearm has not been traditionally treated as a mere sentencing factor in statutes defining weapons offenses, but rather that numerous statutes treated the possession or use of different types of guns as distinct offenses. **Id**. @ **126-27**. Similarly, while the precise quantity of a narcotic drug is certainly a factor that is utilized by courts and sentencing commissions in imposing sentence within statutory limits, See e.g., U.S.S.G. § 2D1.1 (classifying narcotics offense levels based on quantity of various drugs distributed), it is also quite common for statutes to define crimes denoted as distributing of controlled substances in various degrees based on less-refined sets of drug quantities. See e.g., N. Y. Penal Law §§ 220.31, 220.34, 220.39, 220.41, 220.43 (defining (5) different degrees of "criminal sale of a controlled substance" based on drug quantity and type; with the crime of criminal sale of a controlled substance in the fifth degree defined simply as "knowing[] and unlawful[] [sale of] a controlled substance").

Second, the Court noted that the difference between carrying a

machinegun and a less destructive weapon "concerns the nature of the
element lying closest to the heart of the crime at issue." **Castillo**,
530 U.S. @ 126-27.  The heart of the crime is using or carrying a
firearm, and the power of the weapon dramatically affects the
seriousness of the offense.  "The difference between the act of
using or carrying a firearm and the act of using or carrying a
machinegun is both substantive and substantial──a conclusion that
supports a seperate crime interpretation." Id. @ 127.

Here, too, the heart of the offense is distributing dangerous
drugs, and there are dramatic differences between different
controlled substances in terms of their danger.  The penalty scheme
reflects these differences.  Some drugs are "firearms", and others
are "machineguns".  Congress has accordingly punished the crime of
distributing heroin differently than that of distributing marijuana.
This major qualitative difference between crimes cannot be simply
papered over because of the verbal similarity that both involve
"distribution of controlled substance."

While drug quantity may lie less closely to the heart of the
offense, Congress has reflected in its penalty scheme that quantity
has direct correlation to the degree of crime. There is a dramatic
difference between a small-time retail cocaine dealer, a wholesaler
who distributes in quantities of a half-kilogram, and a major
trafficker who distributes in quantities of multiple kilograms.
See 21 U.S.C. § 841(b)(1)(A)-(C) and 21 U.S.C. § 848(a), (b).  To
be sure, minor differences in quantity are appropriately treated by
the Sentencing Guielines as sentencing factors.  At some point,

16

however, this distinction of quantity becomes too large to be anything other than a substantive difference of offense conduct. As the Supreme Court recognized in **Castillo,** this conclusion "support s 'seperate crime' interpretation." **Castillo,** 530 U.S. @ 127.

Third, the Court pointed out that "to ask a jury, rather than a judge, to decide whether a defendant used or carried a machinegun would rarely complicate a trial or risk unfairness." **Id.** Moreover, assigning this factor to a judge would risk "conflict between [the findings of] the judge and the jury." **Id.** @ 128. The same is true here. It would be unseemly in the extreme for a jury to aquit a defendant of distributing (50), or even (5), grams of cocaine base, thus limiting the maximum punishment to (20) years, and have the judge decide that nevertheless the defendant is guilty, at least by a lesser standard of proof, of distributing such a quantity that a mandatory minimum of ten (10) years was required and a life sentence was available. The court and jury would thus have returned opposite "verdicts" on whether the defendant is guilty of the offense described in § 841(b)(1)(A).

Fourth, and most importantly, "the length and severity of an added mandatory sentence that turns on the pressence or absence of a 'machinegun' ...weighs in favor of treating such offense-related words as referring to an element." Where the language leaves uncertainty about the congressional intent, "we would assume a preference for traditional jury determination of so important a factual matter." **Castillo,** 530 U.S. @ 131. This test also favors interpreting the different acts defined in the subsections of § 841(b) as separate crimes. While the refined distinctions in drug quantity

17

in U.S.S.G. § 2D1.1 impose modest gradations of punishment as the precise quantity of each drug involved in the offense gradually rises, the distinction in punishment level in § 841(b) is dramatic. See also 21 U.S.C. § 848(a), (b). There is a world of difference between ranges of zero (0) to twenty (20) years in prison, five (5) to forty (40) years, and ten (10) years to life (or (20) years to life under § 848(a) and a mandatory life term under § 848(b). These are not the marks of mere "sentencing factors", like those in the Guidelines. juries have not traditionally passed on every fact that a judge considers in imposing sentence. but given the importance of determining the vastly different punishment ranges to which a defendant will be exposed, this Court should "assume a preference for traditional jury determination of so important a factual matter." Here, as in **Castillo**, the "length and severtiy" of the added punishment weighs in favor of treating the drug nature and quantity distinctions in § 841(b) and § 848(b) as referring to elements.

The result in **Wood** may be understandable in light of the state of the law when it was decided, but it is very doubtful whether the Supreme Court would interpret § 841 the same was considering **Jones**, **Castillo**, **Almenderez-Torres**, **O'Brien**, and **Apprendi**, or whether any circuit would reach the same conclusion if it faced the issue afresh today with the benefit of the this recent statutory, and constitutional, jurisprudence regarding sentencing regimes.

For the foregoing reasons, Petitioner believes that the correct interpretation of § 841, and the one most likely to be adopted by the Supreme Court if it were to hear and decide the issues, is

18

that both the nature and quantity of the controlled substance are elements of separate offenses defined in subsections of § 841(b), and, as a consequence, at a trial the government would bear the burden of proving the nature of the drug and the threshold amounts with a valid conviction not able to be obtained to a generalized offense of 'distributing a controlled substance in some amount' in violation of § 841(a).

The Supreme Court's O'Brien is in line with the Second Circuit which reached this conclusion by means of a constitutional analysis in United States v. Gonzalez, 420 F.3d 111 (2nd Cir. 2005)(relying on Apprendi). However, jurists have cited Gonzalez while relying on Castillo, supra, for statutory interpretation, See now United States v. Arias, 409 F. Supp. 2d 281 (S.D.N.Y. 2005), concluding:

> "a detailed study of the statute's drafting history, compels the conclusion that...the circuit's conclusion in Gonzalez that drug quantity must be treated as an offense element is correct not merely as a matter of constitutional law, but as matter of statutory interpretation..." Id. @ 294.

> "If the statute's language and history are read with fresh eyes, it is plain that § 841(b)(1) creates four different levels of crime, depending on the type and quantity of controlled substance distributed." Id.

In Arias, the defendant pled guilty to conspiring to violate 21 U.S.C. § 841(b)(1)(A), which provides for a mandatory minimum sentence of ten (10) years, and a potential minimum of life. However, the plea failed to acknowledge that the defendant distributed the amount charged, or to identify the particular controlled substance. Given this fact, the defendant in Arias insisted that he had been legally convicted of crime under § 841(a), but could not be subject to more than a five-year maximum sentence under § 841(b)(1)(D). Id. @ 289

On the other hand, the government vigorously insisted that the defendant was still presumed innocent. **Id**. @ 292. The Court agreed, citing **Castillo** (not **Apprendi**), "Here, as in **Castillo**, the 'length and severity' of the added punishment weighs in favor of treating [the drug nature and quantity distinctions in § 841(b)] as referring to an element." **Id**. @ 303. Moreover, the Court noted that "the present record contains no basis for the Court to determine that there is a factual basis for a plea of guilty to the offense charged, which is distribution not of some generic controlled substance, but specifically of (50) grams or more of methamphetamine." **Id**. @ 305-06.

The statutory analysis prescribed by the Court in **Arias** which leads to the conclusion that drug nature and quantity are offense elements is compelling and correct not merely as a matter of constitutional law, but as a matter of statutory interpretation as well. **Arias**, 409 F.Supp.2d @ 294. A correct reading of the statute, where both type and quantity are elements of various separate and distinct offenses created by 21 U.S.C. § 841, obliges in virtually all such cases a jury must decide which degree of crime was committed, and must find drug type and quantity elements beyond a reasonable doubt. **In Re Winship**, 397 U.S. 358 (1970).

c.     The Statutory Scheme

Title 21 U.S.C. § 841(a) makes it "unlawful for any person knowingly or intentionally——(1) to manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance," such as cocaine base ("crack"). Three

20

subsections pertain to person who traffic in crack cocaine:

1.    In cases involving "50 grams or more" of crack, § 841(b)(1)(A) prescribes the following incarceratory sentencing ranges: (1) a **mandatory ten-year minimum to lifetime maximum** for any offense prescribed quantity; (2) a **mandatory twenty-year minimum to lifetime maximum** if the drugs cause death or serious bodily injury or if the defendant has a prior final felony drug conviction; (3) a **mandatory life sentence** if the drugs cause death or serious bodily injury and the defendant has a prior final felony drug conviction; and (4) a **mandatory life sentence without release** if a defendant has two prior final felonly drug convictions.

2.    In cases involving "5 grams or more" of crack, § 841(b)(1)(B) prescribes the following ranges:

(1) a **mandatory five-year minimum to forty-year maximum** for every offense in the prescribed quantity; (2) a **mandatory ten-year minimum to lifetime maximum** if the defendant has a prior final felony drug conviction; (3) a **mandatory twenty-year minimum to lifetime maximum** if the drugs cause death or serious bodily injury; and (4) a **mandatory life sentence** if the drugs cause death or serious bodily injury and the defendant has a prior final felony drug conviction.

3.    In cases involving lesser or unquantified amounts of crack, § 841(b)(1)(C) prescribes the following ranges:

(1) a **zero minimum to twenty-year maximum** for any offense; (2) a **zero minimum to thirty-year maximum** if the defendant has aprior final felony drug conviction; (3) a **mandatory twenty-year minimum to lifetime maximum** if the drugs cause death or serious bodily injury; and (4) a **mandatory life sentence** if the drugs cause death or serious bodily injury and the defendant has a prior final felony drug conviction.

As this brief review demonstrates, the statute is structured so that each lettered subsection operates independently of the others, without any need for cross-referencing. Within each subsection, the statute provides for each maximum sentence to be linked to a corresponding minimum except where a life sentence is mandatory. The independent operation of each sentencing range within each subsection is confirmed by Congress' identification of circumstances warranting identical sentencing ranges regardless of drug quantity. For example

21

the (20)-life sentencing range is applicable when drug use causes death or serious bodily injury regardless of quantity. Similarly, a mandatory life sentence is required when a prior felon traffics in drugs causing such injury no matter the drug quantity. Congress chose to repeat these penalties in each subsection, rather than create a generally applicable provision.

Nothing in the structure of the statute suggests that these corresponding minimums and maximums, or any of the others prescribed in the statute, can be de-linked to permit mixing and matching across subsections to create hybrid sentencing ranges not specified by Congress. Thus, if a defendant traffics in an unquantified amount of of crack, he faces a sentencing range of zero (0) to twenty (20) years. See 21 U.S.C. § 841(b)(1)(C). If he traffics in "50 grams or more" of crack, that drug quantity increases his sentencing range to ten (10) years to life. Id. @ § 841(b)(1)(A). As the Ninth Circuit has observed, the government cannot "manipulate" the sentencing scheme established by Congress in § 841 to "create [] a link where ther is not one" between the minimum of one subsection and the maximum of another. **United States v. Velasco-Heredia**, 319 F.3d 1080, 1086 (9th Cir. 2003)(rejecting argument that § 841 mandatory minimum could apply without proof beyond a reasonable doubt of the statutory drug quantity); See also **United States v. Gonlzalez**, 420 F.3d 111, 120 (2nd Cir. 2005)("a defendant cannot be convicted of, and is not subject to a mandatory minimum sentence pursuant to, § 841(b)(1)(A) or (b)(1)(B) unless the statute's prescribed drug quantity is proved beyond a reasonable doubt to a jury").

Two Supreme decisions, Chapman v. United States, 500 U.S. 453 (1991), and Neal v. United States, 516 U.S. 284 (1996), which concerned determination of mandatory minimum sentences for drug trafficking offenses involving LSD, provide some guidance on the question presented here.[2] Indeed, some courts hold they are controlling on the question. Therefore, this Court should also consider these opinions in the analysis here.

II. WHETHER 21 U.S.C. § 848(b) CONSTITUTES A SEPARATE SUBSTANTIVE OFFENSE OR A SENTENCING ENHANCEMENT PROVISION?

The issue of whether § 848(b) constitutes a separate substantive offense or a sentencing enhancement provision is one of statutory construction. Thus, the analysis must start with the language, structure and history of the statute. See Garrett v. United States, 471 U.S. 773, 779 (1985); Almenderez-Torres v. United States, 523 U.S. 237, 238 (1998); Jones v. United States, 526 U.S. 227 (1999); Castillo v. United States, 530 U.S. 120 (2000); and United States v. O'Brien, No. 08-1569, 2010 U.S. LEXIS 4169 (5/24/10)(reaffirming Castillo and creating a shift in the Court's jurisprudence with respect to minimum sentences).

As originally enacted in 1970, § 848 set forth one substantive offense; "continuing criminal enterprise", 21 U.S.C. § 848(a). Subsection (a) of the statute has essentially remained the same over the last (40) years. entitled "Penalties; forfeitures", it currently

_____
2. See, also Edwards v. United States, 523 U.S. 511, 515 (1998) ("Of course, Petitioner's statutory and constitutional claims would make a difference if it were possible to argue, say, that the sentence imposed exceeded the maximum that the statutes permit for a cocaine-only conspiracy").

provides:

> (a)  Penalties; forfeitures

> Any person who engages in continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 20 years and which may be up to life imprisonment to a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $2,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, and to the forfeiture prescribed in Section 853 of this title...

(21 U.S.C. § 848(a))

The statue's definitional section has also been left largely unchanged by Congress.  Currently contained in subsection (c), it provides the following definition of the phrase "engaged in a continuing criminal enterprise":

> (c)  "Continuing criminal enterprise" defined
> For the purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if—

>> (1) he violates any provision of this subchapter or subchapter II, of this chapter the punishment for which is a felony, and

>> (2) such violation is part of a continuing series of violations of this subchapter or subchapter II of this chapter—

>>> (A) which are undertaken by such perons in concert with five or more other person with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

>>> (B) from which such person obtains substantial income or resources.

(21 U.S.C. § 848(c))

Despite the fact that § 848 commences with a subsection entitled "Penalties; forfeitures", the Supreme Court in 1985 specifically found that the statute, which at the time was essentially comprised of the two provisions set forth above, constituted a separate substantive crime distinct from its underlying predicate offenses.

Garrett, 471 U.S. @ 779.   Among other things, the Court stressed the
fact that subsection (a) provides a "separate penalty...rather than
a multiplier of the penalty established for some other offense." Id.
@ 781.   In addition, the Court contrased § 848 with the later
repealed recidivist statute, 21 U.S.C. § 849, which the Court found to
be a clear example of a sentence enhancement provision. Id. @ 782.
As the Court recognized, § 849 was entitled by Congress "Dangerous
Special Drug Offender Sentencing" (emphasis added).   See also O'Brien,
supra ("sentencing factors traditionally involve characteristices of
the offender—such as recidivism...")(citing Castillo, 530 U.S. @
127).

One year after the Supreme Court's decision in Garrett,
Congress added the subsection at issue herein, i.e., 21 U.S.C. § 848(b).
Courts have subsequently referred to this subsection as the "super
kingpin statute."   See Chapman v. United States, 500 U.S. 453, 467
(1991); United States v. Torres, 901 F.2d 205, 224 (2nd Cir. 1991)
(holding, "since Section 848(b) requires the jury to find, beyond a
reasonable doubt, elements in addition to those stated in Section
848(a), Section 848(b) resulted in a new offense rather than a
sentence enhancement").   Significantly, Congress did not simply add a
new life sentence provision to subsection (a), which already
provided penalties for the standard CCE offense. Rather, Congress
enacted an entirely new subsection, a carefully crafted prohibition
aimed at the "super kingpins" of the largest and most successful
drug rings.   Subsection (b) provides:

   (b) "Life imprisonment for engaging in continuing criminal
   enterprise"

25

Any person who engages in a continuing criminal enterprise shall be imprisoned for life and fined in accordance with subsection (a) of tis section, if—

(1) such person is the principal administrator, organizer, or leader of the enterprise or is one of several such principal administrators, organizers, or leaders; and

(2)(A) the violation referred to in subsection (c)(1) of this section involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B) of this title, or

(B) the enterprise, or any other enterprise in which the defendant was the principal or one of several principal administrators, organizers, or leaders, received $10 million dollars in gross receipts during any twelve-month period of its existence for the manufacture, importation, or distribution of a substance described in section 841(b)(1)(B) of this title.

As can be seen from the above, subsection (b), like subsection (a), sets out a "separate penalty, rather than a multiplier of the penalty establised for some other offense." **Garrett**, 471 U.S. @ 781. In addition, Congress has proveded in subsection (b) an entirely new set of factual elements for the government to establish. Notably, none of these additional elements concern "charateristics of the offender—such as recidivism." As the Supreme Court has recognized in **O'Brien**, supra, "sentencing factors traditionally involve characteristics of the offender—such as recidivism..." (citing **Castillo**, 530 U.S. @ 127). Subsection (b), by contrast, requires proof of "certain factual predicates that are independent of the characteristics of the offender." The government must establish 1) that the defendant was the "principal" adminstrator, organizer, or leader of a criminal enterprise, and 2) that the enterprise either received $10 million dollars in gross receipts over a one year period, or distributed a quantity of drugs at

26

at least 300 times the quantity described in § 841(b)(1)(B). Thus if the substance in question is cocaine base ("crack"), for example, the requisite amount for purposes of § 848(b) is 1.5 kilograms.

These are the facts that are fundamental to a defendant's offense. Cf., **O'Brien**, supra ("characteristics of the offense itself are traditionally treated as elements")(citing **Castillo**, 530 U.S. @ 127). Importantly, nowhere in § 848(b) is there any suggestion that the government may omit these elements from the idictment and instead simply prove them at the time of sentencing, with evidence that does not even rise to the level of proof beyond a reasonable doubt. See e.g., **McMillan v. Pennsylvania**, 477 U.S. 79, 81 (1986), the statute assigned a pre-determined mandatory penalty based on a particular finding (like the Federal sentencing Guidelines which **Booker** found to be unconstitutional). Also like the unconstitutional Guidelines, **McMillan**'s statute explicitly stated that the particular finding, i.e., a firearm, was not an element of the crime of conviction, and thus was to be established by a preponderance of the evidence. Id. @ 81. n.1. **McMillan**'s statute operates only at the sentencing stage, after the accused has been afforded the full panoply of constitutional protections and found guilty beyond a reasonable doubt. **McMillan**, unlike the instant case, concerns a sentencing enhancement statute, not a substantive offense statute, with instructions that the factor is "not an element of the crime" and should be found by a preponderance of the evidence. **McMillan** is therefore inapposite.

Title 21 U.S.C. § 848(e) also supports Petitioner's position

that § 848(b) results in a new offense rather than a sentence

enhancement. Two years after adding subsection (b), Congress

further amended the statute by adding subsection (e). Entitled

"Death Penalty", it provides:

> (e) Death Penalty
>
> (1) In addition to the penalties set forth in this section——
>
> (A) any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death; and
>
> (B) any person, during the commission of, in furtherance of, or while attempting to avoid apprehension, prosecution or service of a prison sentence for, a felony violation of this subchapter or subchapter II of this chapter who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of any Federal, State, or local law enforcement officer engaged in, or on account of, the performance of such officer's official duties and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death.
>
> (2) As used in paragraph (1)(B), the term "law enforcement officer" means a public servant authorized by law or by a government agency or Congress to conduct or engage in the prevention, investigation, prosecution or adjudication of an offense, and includes those engaged in corrections, probation, or parole functions.

(21 U.S.C. § 848(e)).

As can be seen from the above, subsection (e) is structured

-- precisely the same as subsection (b). Subsection (e) also

contains its own separate penalty, rather than a multiplier of the

penalty established for some other offense. Moreover, like subsection

(b), subsection (e) contains its own factual elements; namely, the

intentional killing of an iindividual in connection with a CCE or

one of the other crimes enumerated in the statute. Thus, the statute

28

on its face plainly sets out three separate substantive offenses in subsections (a), (b), and (e).

Some case law addressing § 848 strongly supports that these subsections are separate substantive offenses and not merely sentencing enhancement provisions. See **United States v. Torres**, 901 -- F.2d 205, 240 (2nd Cir. 1990)("we are inclined... to agree with [the petitioner] that since Section 848(b) requires the jury to find, beyond a reasonable doubt, elements in addition to those stated in Section 848(a), Section 848(b) resulted in a new offense rather than sentence enhancement"); **United States v. N.J.B.**, 104 F.3d 630, 633 (4th Cir. 1997)(holding that § 848(e) is a separate offense and not a mere sentence enhancement).

Like subsection (e), § 848(b) contains its own factual elements and its own independant penalty provision. The § 848(b) "super king-pin statute" was designed to reach its own special problem—the kingpins of the largest and most sophisticated drug organizations.

III. THE TRANSCRIPTS CONCLUSIVELY DEMONSTRATE PETITIONER'S ACTUAL INNOCENCE

The Supreme Court has recognized that the enhancement of a noncapital sentence to a capital one based upon proof of statutory "aggravating factors" (here, elements) also establishes a separate "offense", and raises the possibility that a defendant might be "actually innocent" of that offense. **Sawyer v. Whitley**, 505 U.S. 333 (1992). The Court recognized that, where review of such a claim is barred, the defendant would have no remedy for a fundamentally defective sentence. In making an exception for an otherwise barred claim where the Petitioner asserts that he is

"actually innocent" of the aggravating elements that permit a
capital sentence, the Court found there must be review in the case
the Petitioner claims he is actually "innocent of death." Id. @
341. See also Bousley v. United States, 523 U.S. 614, 626 (1998),
"If the record disclosed that at the time of [conviction], neither
the accused, nor his counsel, nor the district court correctly
understood the essential elements of the crime with which he was
charged, then the [conviction] was invalid under the Federal
Constitution." Id. "We believe it's appropriate to remand this
case to permit petitioner to attempt to make a showing of actual
innocence." Id. @ 623.

As in Bousley, when Petitioner was advised by the trial judge,
his own lawyer, and the prosecutor that drug type and quantity were
sentencing factors to be found by the court by a preponderance of
the evidence, and that he could be found guilty of a generic
violation of § 841(a), he received critically incorrect legal advice.
The fact that all of his advisors acted in good-faith reliance on
existing precedent does not mitigate the impact of that erroneous
advice. It's consequences for Petitioner were just as severe and
unfair as if the court, his attorney and the prosecutor had knowingly
conspired to convict him of a crime that the jury did not find
beyond a reasonable doubt. Id. @ 626.

As in Sawyer, Petitioner is actually "innocent of death"—i.e.,
of the aggravating factors drug type and quantity—which permits the
increase of his sentence. As the facts of this case make clear, there
was no indictment or jury's verdict as to a violation of 21 U.S.C.
§ 841(b)(1)(A), (b)(1)(B), or (b)(1)(C) when Petitioner was

adjudicated as a class A felony violator under § 841(b)(1)(A).

Accordingly, Petitioer is innocent of the statutory "offense" because there is no factual basis in the record to support a conviction for a crime of (50) grams or more of cocaine base. In fact, Petitioner was sentenced, in part, for a non-existent offense—violating §841 (b)(1)(A) where there is no indictment or jury's verdict.[3]

the second Circuit has extended _Sawyer_'s reasoning about capital sentences to all non-capital sentences. **Spence v. Great Meadow**, 219 F.3d 162 (2nd Cir. 2000); See also **Haley v. Cockrell**, 306 F.3d 257, 265 (5th Cir. 2002), vacated sub nom. **Dretke v.Haley**, 541 U.S. 386 (2004); **United States v. Mayback**, 23 F.3d 888, 893-94 (4th Cir. 1994); and **United States v. Mikalajunas**, 186 F.3d 490, 496 (4th Cir. 1999)(all holding, where a petitioner can demonstrate that he is actually innocent, the petitioner is entitled to review of his sentence).

In extending the actual innocence exception to non-capital sentences, the Fourth Circuit said that "we see little difference between holding that a defendant can be innocent of the acts required to enhance a sentence in a death case and apply a parallel rationale in non-capital cases." **Mayback**, 23 D.3d @ 893. The Court went on:

> "In capital sentencing cases, the jury has determined guilt, and when aggravating factors are present, the sentence is enhanced to one of death. In non-capital enhancement cases, the length of a defendant's sentence may be aggravated by factors specified by the statute or the Guidelines. Hence, a defendant in either a capital or non-capital case would unless excepted from the [procedural bar] suffer the same general consequence (an enhanced sentence) from being held responsible for an act of which he or she is actually innocent." _Id_. @ 893.

---

3.    The same legal logic applies with 21 U.S.C. § 848, because § 848 is not operative without or functionally independent from a

The Fifth Circuit in **Haley** agreed with Fourth Circuit, that colorable assertions of actual innocence apply to permit review of barred sentencing claims in the career offender context because the "fundamental purpose" of habeas copus is to see that "constitutional errors do not result in the incarceration of innocent person." **Haley**, 306 F.3d @ 265. Assuming that an illegally enhanced crime without indictment or jury verdict would rise to a constitutional level, this Court should agree.

## NO ISSUE AS TO RETROACTIVITY

Since the rule announced in **O'Brien** is substantive rather than procedural, the analysis set forth in **Teague v. Lane**, 489 U.S. 288 (1989), does not apply here. This Court has a constitutional obligation under the demands of the Federal Due Process clause to apply the Supreme Court's statutory interpretation retroactively. See **Fiore v. White**, 531 U.S. 225, 228 (2001)(Where the Supreme Court explained that when the Court interprets a criminal statute to require proof of a particular element, and that interpretation does not create new law but merely clarifies what the law was at the time of a defendant's conviction, there is "no issue of retroactivity").

The Court's interpretation of the proof required must be applied on collateral review to prevent a violation of the Due Process Clauese of the Fifth Amendment, "which guards against convicting a defendant without proof beyond a reasonable doubt on each element of his crime. **Id**. @ 228-29 (citing **Jackson v. Virginia**, 443 U.S. 307, 316 (1979); and **In Re Winship**, 397 U.S. 358, 364 (1970); See also **Bunkley v. Florida**, 538 U.S. 835, 836-37 (2003)(where the United States Supreme Court reversed the Florida Supreme Court that

32

rejected Bunkley's request for retroactive application of a decision construing an element of the crime of which Bunkley had been convicted). As in the instance case, in **Bunkley** the statutory construction, if applied to that defendant's case, would have reduced the maximum charge and substantially reduced the sentence.

Thus, there is no issue of retroactivity in this case.

## CLOSING STATEMENTS

The Supreme Court's decision in **O'Brien** compels that this Court's former interpretation of Title 21 U.S.C. § 841(a) and/or 848(a) creating a single offense accompanied by a congeries of sentencing factors under section (b) was erroneous. Petitioner Yates mandatory life term for an uncharged/unproven crime should be vacated. See, **United States v. Castro-Davis**, 612 F.3d 53 (1st Cir. 2010)(Court erred in imposing mandatory statutory penalty of Life, where statutory sentence was "any number of years up to Life"). See also **O'Brien**, supr (same); and **Gilbert v. United States**, 609 F.3d 1159 (11th Cir. 2010)("The united States Supreme Court has recognized that the enhancement of a non-capital sentence to a capital one based upon proof of statutory aggravating factors also establishes a seperate 'offense,' and raises the possibiltity that a defendant might be 'actually innocent' of the offense"). Here, all parties must agree that the government failed to prove that Patitioner Yates was the "Principal administrator, organizer, or leader of a criminal enterprise", that involved 1.5 kilograms of cocaine base (crack).

---

violation of 21 U.S.C. § 841, which is necessary to support a § 848 conviction.

This deficiency has two ultimate consequences: (1) Petitioner Yates is "actually innocent" of a violation of § 848(b) and/or § 841(b)(1)(A) and should be discharged from custody; and (2) Petitioner Yates is innocent of a violation of § 848(b) and/or § 841(b)(1)(A), which may legitimately permit a conviction and liability under a violation of § 848(a) or § 841(b)(1)(C), which appeasrs to be the lesser included offense.

Because, there is no factual basis for Petitioner Yates' conviction under the uncharged/unproven 21 U.S.C. § 848(b), it follows inexorably that be has been denied due process of law. And, because the Constitutional error clearly and concededly resulted in the imposton of an unauthorized sentence and/or conviction, it also follows that Petitioner Yates is a "victim of a miscarriage of justice." **Wainwright v. Syke**, 433 U.S. 72 (1977), entitled to immediate and unconditional release.

## CONCLUSION✻

Petitioner Yates may be innocent of the crime for which he was convicted. Prior to bringing this Petition, he had no effeective opportunity to raise his claim of actual innocence. The Section 2255 is not available to him, and he do not believe that, in enacting the AEDPA, Congress intended to deny him a forum in which to have his claim heard. Indeed, to assume that Congress did so would be to imperial the constitutional validity of the AEDPA. In such circumstances, § 2255 is inadequate and/or ineffective to test the legality of Petitioner Yates' detention, and accordingly, he is therefore entitled to raise his claim by way of section 2241.

34

Respectfully submitted,

By _____
James A. Yates, Pro se
No. 06820-424
USP Lewisburg
P.O. Box 1000
Lewisburg, PA 17837

## CERTIFICATE OF SERVICE

I, James A. Yates, after having been duly sworn and under oath, hereby depose and state that on this _____ day of March, 2011, I placed this petition for habeas corpus in the institutional mail box here at U.S. Penitentiary Lewisburg.

By _____
James A. Yates, Affiant

(28 U.S.C. Section 1746)